In the Matter of Proving the Last Will and Testament of SARAH A. DELMAR, Deceased.

THE NATIONAL CITY BANK OF NEW YORK and Another, Appellants; HENRY F. BARNES and Others, Respondents.

First Department, November 27, 1925.

**Wills — testamentary capacity — verdict that intestate did not have testamentary capacity is against weight of evidence.**

The verdict in this case, in proceedings to probate the will of the testatrix, to the effect that the testatrix did not have testamentary capacity at the time the will was executed, is against the weight of the evidence, since it appears that the will was executed with due formality and in strict compliance with the wishes of the testatrix; that persons coming into contact with the testatrix all testified that she was capable of understanding and did understand her affairs, and knew the property she had to bequeath and the natural objects of her bounty. The mere fact that she did not dispose of the residue of her estate and that a physician who had never seen the testatrix acting as an expert witness testified in answer to a hypothetical question that she was incompetent at the time the will was made did not overcome the evidence in favor of her capacity.

APPEAL by the National City Bank of New York and another, from a decree of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 29th day of June, 1925, upon the verdict of a jury denying probate of a certain paper alleged to have been executed January 5, 1925, as the last will and testament of Sarah A. Delmar, deceased.

*Hunt, Hill & Betts* [*Robert McLeod Jackson* of counsel; *H. Victor Crawford, II,* with him on the brief], for the proponent, appellant.

*Battle, Vandiver, Levy & Van Tine* [*George Gordon Battle* of counsel], for the respondents.

McAVOY, J.:

This probate proceeding has unusual features. No undue influence is charged and the persons who assisted in the preparation of the will are not benefited in any way by the provisions thereof.

The case was tried before a jury which found against the proponent on the issue of testatrix's testamentary capacity. There is nothing suspicious about the will; it is written in long hand; it bears the entirely legible signature of the decedent; the provisions were given to the attorney who, at her request, came there and drew it at decedent's apartment, and it is subscribed by the proper number of witnesses. The surrogate excluded a most convincing piece of evidence, which was a memorandum made by the decedent herself of the various amounts which she intended the different

legatees to receive and which were the same as were put into the will. The dispositions of the property of the decedent are as thus shown in accord with many of the express wishes she made long prior to her making the testament. The memorandum was made sometime after October, 1924; the will is dated January 5, 1925. The testatrix, too, according to uncontradicted testimony, gave instructions to the writer of the will as to what she wanted included therein, and rejected several promptings made as to other bequests and acceded to but one of many. There is, in fact, no doubt that the will speaks her desire as to the disposition of her property, so far as it goes, and her statement to the witnesses at her bedside of the amount she had to dispose of was accurate to the dollar. She thus knew the property she had to bequeath and the natural objects of her bounty.

The contestants seem to base their claim of testamentary incapacity principally upon the fact that decedent made no disposition of the residue of her estate. She apparently did not know what to do with it. She was doubtless too tired to make any further dispositions. It is said, too, that she slept at times during the recital of her proposals and was shaky in her signature and was suffering from uremic poisoning which sometimes *in extremis* induces coma.

That she was acquainted with and well remembered small affairs of hers is indicated by the proof that she gave instructions as to her jewelry and a ring of a Mrs. Wilcox, which, apparently, had been left with her for a loan of $125. She said Mrs. Wilcox was to have this ring.

Both Dr. Muns, the doctor present at the making of the will, and the nurse, testified as to the sick woman's having asked how long she had to live, and the doctor recalled her having said she had $152,000 and had lost money. Each of the attesting witnesses said that the testatrix was rational and competent to make her will in their opinions. Messick, the manager of the hotel where she lived, said: " She knew what she was doing at all times." Dr. Muns said: " She seemed to be straight out from the shoulder with most of it," that is, what she wished to convey concerning her dispositions of her moneys.

The nurse on duty with the decedent when the will was made, said, speaking of a time that Mrs. Delmar wanted to make a will, that the decedent said: " I must have witnesses."

The day nurse, who had gone off duty at eight P. M., said Mrs. Delmar evinced a very strong mind and had a will of her own and knew how to make it known.

No witness undertook to say that Mrs. Delmar was irrational,

except Dr. Pritchard, an expert called by contestants, who never saw her.

The testimony of Dr. Pritchard, who gave his answers as to testatrix's condition and ability to comprehend the nature of her act, to a hypothetical question did not afford a sufficient ground for invalidating the will. He had never seen the patient; had not attended similar cases for over twenty-five years and admitted that testatrix might have been able to understand the simple bequests but not the disposition of the residue. He said: " Q. And not having been present at the time or without having seen this woman, you set yourself up to say that these witnesses, who were with her all the time, one a reputable attorney and another a reputable doctor, and another the assistant manager at the hotel, obtained erroneous impressions while you merely from a statement of some of the evidence in the case, must be right in your conclusion that Mrs. Delmar was unable to make a will at the time? A. That is my opinion, yes."

Such an opinion does not rise to the probative weight necessary to overcome the testimony offered by proponent, which bears all the earmarks of credible statement and which carries conviction by its inherent probability.

We think the evidence does not establish incapacity of the decedent to make a will of the kind offered for probate, but on the contrary demonstrates that testatrix was competent, and, therefore, the decree should be reversed, with costs to the proponent, appellant, against the respondents, and the will admitted to probate, and the proceeding remitted to the surrogate for further action in accordance with this opinion.

Clarke, P. J., Dowling, Merrell and Burr, JJ., concur.

Decree reversed, with costs to the proponent, appellant, against the respondents, and proceeding remitted to the surrogate for further action in accordance with opinion.